Wynder, United States v. Wynder. Good morning, Your Honor. Mr. Murphy, you may proceed. May it please the Court. Your Honors, thank you for giving us oral argument and so quickly. I know you don't have to do that. It's appreciated. My client was convicted of various white-collar convictions in the Southern District in January. He was sentenced and given until May 7th to turn himself in. We're asking for that to remain. I'll tell the Court that as of yesterday, I did receive a deadline now for my brief, and it's July 25th. I want you to realize that. I'm sorry, what was that date, July 25th? July 25th, Your Honor. We just got it yesterday. My client, of course, is not a flight risk. I don't think that's going to be an issue here. He's 60 years old with no prior convictions. He's been out for more than three and a half years in this case. He's, of course, taking care of his ill wife, who has stage 4 leukemia. I know the Court knows that. I don't think flight risk is going to be an issue. I would like to address the substantial question of law, of course. Yeah, I think that's really the focus. So my trial counsel here passed away seven months after the verdicts in this case. And there really are of this degenerative brain disease. But there are three facts that I want to point to the Court that will corroborate that this is a substantial question. And there's two events that kind of bookend the trial here. We have the attorney collapsing in March of 2023 when they first tried to pick a jury here. And then within two months after the verdicts, he is writing the Court saying that he got a brain scan. He was hospitalized for a week, and his brain, in fact, changed. They thought it was a brain tumor. It turned out it was CJD. So, counsel, I think you laid this all out very helpfully in your papers. How would this proceed on appeal? Because usually an ineffective assistance counsel claim involves, requires some sort of a factual hearing, right? The district court is going to take testimony here. There would be no opportunity to take testimony from the attorney who's passed away, but maybe co-counsel, other people who were present in the courtroom. So I'm trying to think, how does this even play out on appeal other than us saying, look, this is exactly what 2255 was designed for? So what would you even be asking for on direct appeal? I think if the Court does not believe that there's enough on the record, and I recognize that is the general custom, we would ask that it be remanded directly to the district court, ultimately, as opposed to just saying, go do a habeas. And the reason I say this, I give the Court a long list of cases over the last two years, mostly summary orders where you don't have the merits that we have here, number one, and we have a very simple case to be remanded if that's what the Court decides. I give you the Leon decision. I think that was the first. Can I interrupt for a second, though? Yes, Your Honor. I mean, it seems to me here what we do have is the trial judge making a record as to whether or not Mr. Goltzer was ineffective. So in other words, I think most people who practice in the Southern District have known Mr. Goltzer. He was a fixture, a very, very effective lawyer, no question about it. But the Constitution doesn't entitle you to Goltzer's A game. It just entitles you to constitutionally sufficient counsel. And Judge Castell, who was at the trial for every minute, said that that is in fact what was provided by Mr. Goltzer. So the fact that investigators said, oh, boy, he would have given a better summation if he weren't sick, that may be true, but I don't see what in your papers you pointed to to suggest that this falls below the constitutional minimum. At least two parts to my answer here, Judge. I think if you look at the Randolph decision, which gives us the standard for the bail pending appeal statute, it gets into what the congressional intent was for likely. But just what is it that you're saying that was ineffective? I mean, what you're saying is that the crosses could have been longer. I mean, that doesn't usually do it. I mean, is there something that you can say that was missed or that was he opened the door to something that shows that he wasn't clean? Sure. I guess as one example of the majority of the witnesses were not cross-examined. But the one I guess I'd like to maybe leave you with was the FBI agent, Lapert Tower. I'm sure I'm butchering the name. It's the only FBI agent that testified. She gets into the money moving from the annuity fund to the operating account. She gets into the debate over whether these are administrative expenses. It's a summary of the government's case and no cross-exam. Even if your theory of defense is good faith, this is a golden opportunity and the ultimate opportunity for a defense attorney to at least mitigate. Does this pertain to all counts or just the tax counts or what? That witness addressed pretty much all the counts. All the counts. It's just an example. This was a trial with two defendants, right? That's correct, Judge. And so sometimes counsel sort of divide up who's going to be the primary cross-examiner for a particular witness. Judge, I think that if I could turn the court really to the main legal argument that we're making, and that is that this prejudice should be presumed. It should reach the short list of cases that you have where prejudice is presumed. And it's because this attorney was suffering from this degenerative brain disease that normally when we release- Or may or may not have at the time, right? I mean, we don't know. You've laid out certain facts that in your review you think suggest that. So I guess I just keep coming back to this is a question of bail pending appeal. And it seems to me that it's ultimately going to be a factual question. And as Judge Sullivan pointed out, you already have a certain number of findings by the district judge. But at best, what you're asking as a remedy is more proceedings in the district court, not any relief that this court could give. If it comes down to that, Your Honor, I'm not prepared to concede that there's no sufficient record here. But I would say that if it came down to the choice between send us on away and do a habeas or directly remand, we think it's a more proper case for a remand. We think that at first it looks like it's complex, but it's not. It's a very simple concept. You'd have someone that would confirm for certain that he suffered from CJD. You'd have co-counsel perhaps testify. You'd have the defendant testify. It's a very straightforward hearing to be remanded for. If that's where the court comes down, then that's what we would ask. But, I mean, a lot of this was already fronted in the motion to extend the surrender date, right? And to seek bail pending appeal in the district court. It was a broad summary, I would say, Judge. Yes. Broadly, it was placed before the district court, Judge. But, I mean, it seems what Judge Castell was focused on was what took place at the trial. You seem to be suggesting that you should get the presumption of ineffectiveness based on the diagnosis of a disease. That's where we're heading, but it would have to be corroborated by what you see on the record. And I think we were able to do that showing this counsel's inaction when we showed it. Well, thank you. Thank you, Your Honor. We'll now hear from Mr. Roback. May it please the court, Andrew Roback for the government. Under the normal Strickland standards, the defendant has identified no issue that would justify finding ineffective assistance of counsel in this case. Under the normal? What's the abnormal Strickland standard? I mean, I guess his argument is that this is a presumption case because of the nature of the disease. And so what's the response to that? The response to that, Your Honor, is that this court has already decided, as it explained in Tippins v. Walker, one of the cases we cite, that cases of attorney illness are understood through the normal Strickland standard. You have to identify specific errors that the attorney made and show prejudice stemming from them, even if those errors are attributable to the attorney's illness. That makes perfect sense because there are all sorts of attorney illnesses or other reasons for attorney poor performance that can occur in the course of a trial. And so rather than have a lengthy inquiry into the attorney's health that leads to some kind of a presumption, you simply apply the usual sort of standard. I'm not sure we're talking about health. We're talking about the deterioration of the brain with a disease that does physically destroy the brain over time, and it resulted in his death soon after. I mean, I guess your argument is that the fractional remains of his brain were enough to conduct a trial. Judge Castell found that he was a vigorous and effective advocate at the trial, but I would have two other responses to that, Your Honor. One is that the standard this court has set forth is that whatever his health condition, the court should inquire as to whether it affected his performance at the trial, that the defendant is entitled to a level of performance by a defense lawyer and not— By saying affected his performance, you mean affected his performance— I mean, the argument is made that it did affect his performance, but the counterargument is that whatever his performance was, it was not below a minimal standard. That's correct, Your Honor, and I didn't prejudice him. But in any event, our second answer to this is to the extent that that is a live issue in this case, there is a very poor record here for consideration of it. I mean, there could always be a better record made. Let me give you a hypothetical. Assume that a talented criminal defense lawyer suffering from paranoia escapes from a mental asylum and goes back to practice and does a pretty good job at a trial. Is that something that should cause us to have concern under Strickland? Assuming that the attorney was still a member of the bar and had no disciplinary proceedings or anything— You don't get disbarred for mental illness. Then, yes, the defense would have to show that something about his condition affected his performance at the trial in a way that prejudiced the defendant because it didn't rise to the level expected of defense lawyers practicing in the court. That's this court's holding as described in Tippins and some of its progeny. That's the normal Strickland case? Yes, Your Honor, that's correct. The question is whether this is an abnormal— This is not an—the court's decision in Tippins explains, and I can read some of the language, Your Honor, if you'd like, that these cases are not abnormal in that way. The Strickland test is perfectly capable of considering different factual circumstances for attorneys and whether something about that means they performed in a manner that was prejudicial to the defendant at the trial. There's nothing exceptional or abnormal about attorney health that makes it different from other reasons why an attorney might perform in a prejudicially poor manner at a trial. Can I ask you if this—let's say this appeal is definitely going forward one way or the other. They're going to raise this argument in their blue brief. Is your red brief just going to say, look, this needs to be decided on habeas under Massaro? It depends on how it's raised in the blue brief, Your Honor. For right now, we think that they haven't identified anything under the normal standards. But normally they don't have to because normally we say, look, the default is we don't look at these things on direct appeal. So normally the red brief says, look, you know, you kick this to 2255. That's what the Supreme Court has said is the default. That's what we've subsequently said is the default. So I guess I'm wondering, is this really—is it really going to be a live issue that's going to be adjudicated on appeal? We think there's a—without prejudice—we don't want to prejudice ourselves to what our brief might say, but there's a very strong chance, yes, this is the kind of issue that requires fact development, this kind of fact development in the ordinary course happens in a 2255 proceeding. So it's quite likely there, as here, we would argue that to the extent the court wants there to be development of this issue, it should occur—the court should affirm the judgment below here and allow them to file a 2255 as ordinarily happens in these kinds of cases. And I'd just like to say that that 2255 proceeding would not be simple, as the defendant is arguing here. It would require medical evidence about Mr. Goldster. There might be expert testimony about the effect of CJD and how it might have affected him at the time. His co-counsel would have to testify. This would be a complicated 2255 should it occur. It's not the kind of thing that should be handled on remand. I see my time has expired. Unless the court has any other questions, we ask the court to deny the motion. Thank you both. We will reserve decision.